# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **IN RE:** | **CASE NO.  16-00152** |
| **JEM REST CORP** | **Chapter   11** |
| | **Adversary No. 16-00095** |
| **Debtor(s)** | |
| **JEM REST CORP** | |
| **Plaintiff** | |
| **vs.** | |
| **HON. JUAN ZARAGOZA PUERTO RICO TREASURY DEPARTMENT** | |
| **Defendant(s)** | <span style="color:red">**FILED & ENTERED ON 06/10/2016**</span> |

## OPINION & ORDER

Before the court is Plaintiff/Debtor JEM Restaurant Corporation's ("JEM") *Urgent Motion for Temporary Restraining Order and/or Preliminary Injunction Protection* and accompanying *Memorandum of Law* [Dkt. No.'s 2 & 3] and Defendant, Puerto Rico Department of Treasury's ("Treasury") *Memorandum of Law in Opposition to Plaintiff's Request for Preliminary Injunction*

1

[Dkt. No. 13]. The court entered an Order denying JEM's request for a temporary restraining order due to JEM's failure to carry its burden on the issue of "irreparable harm to the debtor or the estate" and scheduled a preliminary injunction hearing for May 27, 2016 [Dkt. No. 6]. Following the preliminary hearing, the court ordered both parties to submit legal briefs addressing the issue of whether Treasury "followed the proper legal and/or regulatory procedures, whatever they may be, in accordance with the relevant statute, in cancelling JEM's liquor license." [Dkt. No.'s 16, 20 & 22]. The parties have complied and the court considers the matter fully briefed.

In the First Circuit, as elsewhere, the four standard factors that a movant would have to establish to obtain injunctive relief are as follows:  (i) there is a likelihood of success on the merits of the claim; (ii) that it will suffer irreparable harm if the injunction is not granted; (iii) that the harm to the requesting party if the injunction is not granted is greater than the harm to the opposing party if it is granted; and (iv) that the public interest would not be adversely affected by the issuance of the injunction. See Sunshine Development, Inc. v. F.D.I.C., 33 F.3d 106, 110–11 (1st Cir.1994). It has been well established that the broad injunctive powers under 11 U.S.C. § 105(a) should be used sparingly. In re Lazarus Burman Assoc., 161 B.R. 891, 901 (Bankr.E.D.N.Y.1993); In re Codfish, 97 B.R. 132 (Bankr.D.P.R.1988); In re Criadores De Yabucoa, Inc., 75 B.R. 96 (Bankr.D.P.R.1987). Thus, a preliminary injunction is an extraordinary and drastic remedy which should only be granted when the movant has carried its burden through clear and convincing evidence. In re Philadelphia Newspapers, LLC., 407 B.R. 606, 616 (Bankr.E.D.Pa. 2009); In re Cincom iOutsource, Inc., 398

2

B.R. 223, 227 (Bankr.S.D.Ohio, 2008).

The burden of providing a factual basis sufficient to justify a preliminary injunction rests with the party seeking the injunction. Nieves—Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir.2003). Unless the parties' competing versions of events are "in sharp dispute such that the 'propriety of injunctive relief hinges on determinations of credibility,'" Rohm & Haas Elec. Materials, LLC v. Elec. Circuits Supplies, Inc., 759 F.Supp.2d 110, 117 (D.Mass.2010) (quoting Campbell Soup Co. v. Giles, 47 F.3d 467, 470 (1st Cir.1995)), the court is free to accept as true "well-pleaded allegations [in the] complaint and uncontroverted affidavits." Id. at 114 n.2 (quoting Elrod v. Burns, 427 U .S. 347, 350 n.1 (1976)). The court must ensure that "given the nature and circumstances of the case ... the parties have a fair opportunity to present relevant facts and arguments to the court, and to counter the[ir] opponent's submissions." Aoude v. Mobil Oil Corp., 862 F.2d 890, 894 (1st Cir.1988). See also U.S. Elec. Services, Inc. v. Schmidt, 2012 WL 2317358 (D. Mass. June 19, 2012).

The question of whether JEM is likely to succeed on the merits of its complaint, at least in regards to the turnover of property, is the critical factor to be determined here. See Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir.1991). If the court ultimately determines that the liquor license was revoked on December 11, 2015, and no reconsideration of the revocation was timely requested by JEM pre-petition, then the license itself is not property of the estate and JEM's request for turnover of property under 11 U.S.C. § 543 fails.

At this point, some facts are germane to the analysis. This information has been gleaned from

3

the record of the case and the testimony provided by Ms. Myrna Medina Massanet, Director of the Consumption Tax Bureau and Mr. Jose E. Montes Alvarez, president of JEM, at the preliminary injunction hearing. On December 9, 2015, agents for Treasury visited the restaurant owned and operated by JEM and served a notification about a meeting to take place in Treasury's offices the following day, December 10, 2015. That meeting took place between Ms. Medina Massanet, Esq. and Mr. Victor Rivera Rodriguez, a representative of Mr. Montes Alvarez. At that December 10th meeting, Ms. Medina Massanet, Esq. handed Mr. Rivera Rodriguez a certification of sales and use tax debt and a copy of a letter dated December 10, 2015, which stated that the liquor license of JEM Restaurant Corporation was being revoked. The letter stated the reasons why the license was being revoked and provided JEM thirty (30) days to contest Treasury's revocation through the 'clerk of adjudicative procedures.'[1] At that meeting, Mr. Rivera Rodriguez accepted that JEM had not remitted the sale and use tax to Treasury and was unable to pay the debt at that time.

On December 11, 2015, Mr. Montes Alvarez and Mr. Rivera Rodriguez went back to Treasury's offices and met with Ms. Medina Massanet, Esq. At the meeting, Mr. Montes Alvarez was handed a copy of the December 10, 2016 letter revoking the liquor license. On that same date, agents from Treasury confiscated the license from the restaurant. Mr. Montes Alvarez did not dispute the revocation of the liquor license within the thirty (30) days period afforded by Treasury. On January 14, 2016, JEM filed a petition for relief under chapter 11, and on May 12, 2016 filed the captioned adversary proceeding.

---

[1] Secretaria de Procedimiento Adjudicativo del Departamento de Hacienda.

4

JEM's arguments can be boiled down to one material issue - did the Secretary of Treasury revoke JEM's liquor license without a hearing, and thereby deny its administrative due process? In order to sustain this argument, JEM cites to a myriad of Puerto Rico court cases and the Internal Revenue Code purportedly stating that the Secretary of Treasury *must* conduct a hearing with guarantees of due process before making a determination of whether or not to revoke a license granted by Treasury. In their brief, JEM quotes a definition of the term "license" from Section 32401 of the Internal Revenue Code and uses it to set up the premise that a license is a "right" and not a "privilege." From this point forward, JEM springboards to the proposition that because a "liquor license" is a right under the Internal Revenue Code, Treasury is "obligated to conduct a hearing with all the guarantees of the Uniform Administrative Procedure Act."[2] JEM then leads the court to the two relevant statutes, 13 L.P.R.A. § 33241 and 13 L.P.R.A. § 33043, and concludes that these sections require that the Secretary conduct an administrative hearing before making a determination to revoke a license. In due time, JEM's argument breaks down because the initial premise is flawed and moreover, it is not in accordance with the actual requirements of revocation under the Internal Revenue Code.

13 L.P.R.A. § 33241(a)(5) requires that the Secretary of Treasury revoke the internal revenue license of any person after having conducted administrative procedures pursuant to the Uniform Administrative Procedures Act of Puerto Rico ("UAPA"). In turn, the UAPA, §§ 2101 et seq. Title 3 was enacted to ensure that administrative procedures were carried out in a speedy, fair and

---

[2] Docket Number 20, page 4.

economical way.[3] Section 2101 of the UAPA states "the provisions of this chapter shall be construed liberally," and more importantly, the relevant provisions therein apply exclusively to adjudicative proceedings.

13 L.P.R.A. § 33043 (b) and (d) deal specifically with the revocation of licenses and the remedy afforded to those persons whose license has been revoked:

> …
>
> (b)The Secretary may revoke the license of any person who fails to meet any of the requirements of §§ 32401 et seq. of this title, who violates regulations or the norms established by the Secretary, as well as for any other reasonable and just cause after the interested party has been ***heard***.
>
> …
>
> (d)Against the action by the Secretary whereby he/she revokes or suspends a license, the holder of such license may resort, by filing a complaint with the Office of the Clerk of Adjudicative Proceedings of the Department, pursuant to the provisions of §§ 2101 et. Seq. of Title 3, known as the "Uniform Administrative Procedure Act." Such complaint shall be filed within thirty (30 days following the date of notice of the resolution by the Secretary to that effect.

(emphasis ours).

The court has reviewed numerous statutes[4] in the Laws of Puerto Rico Annotated ("LPRA") and finds that state agencies are authorized to take actions that provide the affected persons:

---

[3]An administrative agency adopts guidelines and interpretative rules to consolidate its internal procedures, establish limits of administrative discretion, or for internal purposes; said guidelines and rules are exempted from procedures of formal regulations, are intended to maintain the agency's flexibility, and do not therefore affect the rights of the parties. Gobernador v. Hon. Cruz Manzano, Alcalde, 142 D.P.R. 619 (1997).

[4] 13 L.P.R.A. § 33241 – no rights provided to affected persons; 32 L.P.R.A. § 2699c(6) – the ***right*** of the affected person to be heard; 20 L.P.R.A. § 3310 (b) – the ***right*** of the affected person

6

- no opportunity to be heard, or

- the right to be heard, or

- the right to a hearing.

The language is specific in each statute reviewed. If the legislature intended to give license holders the *right to a hearing* or the *right to be heard* or *no right at all* prior to the revocation of a license, there exist numerous examples in the LPRA to adopt. However, Section 33043 is clear and unambiguous that an affected party has only the *opportunity to be heard*, not even *the right to be heard* as seen in other statutes. This court is tasked with the duty of ascertaining whether or not Treasury complied with their legal and procedural obligations under the Internal Revenue Code. This court is charged with interpreting the facts against the existing statute, not to re-write the law.[5]

In the matter at hand, Treasury notified JEM Restaurant Corporation of a meeting with the Director of the Consumption Tax Bureau. The notice provided a date and a time. It was Ms. Medina Massonet's testimony that the meeting took place on the appointed date and time with a duly identified representative of JEM Restaurant Corporation, Mr. Rivera Rodriguez. The tax debt was discussed and Mr. Rivera Rodriguez agreed that the debt was owed. Ms. Medina Massonet's further testified that the following day she met with both Mr. Rivera Rodriguez and JEM's president Mr. Montes Alvarez, and that it was again agreed that the debt was owed and could not be paid at that

to a hearing. This last statute which deals with the suspension or revocation of professional licenses mirrors 13 L.P.R.A. § 33043 in that the board first determines that the license is revoked and only then affords the affected person the right to dispute that revocation within thirty (30) days in a formal adjudicative proceeding.

[5] Notwithstanding the Plaintiffs repeated references to the term "hearing," the actual term in the relevant statute is "heard."

7

time. At that time and place, a copy of the December 10, 2015 revocation letter was personally delivered to Mr. Montes Alvarez. Based on this factual scenario, JEM Restaurant Corporation was "heard" as is mandated by 13 L.P.R.A. § 33043(b), it had no valid defenses to the tax debt owed, and could not pay the debt.

Subsection (d) of 13 L.P.R.A. § 33043, provides the remedy available to persons whose license has been revoked. All of the procedural safeguards that JEM contends are missing from the initial revocation of the liquor license, are found in this subsection. It was the testimony of Mr. Montes Alvarez that he has no recollection of being notified of the December 10, 2015 meeting with Treasury, nor any recollection of Mr. Rivera Rodriguez. He does admit to attending a meeting with Ms. Medina Massonet on December 11, 2015, but has no recollection of receiving the revocation letter due to the high volume of documents he received on that day. As the trier of fact, the court has a duty to weigh the evidence and assess the credibility of the witnesses and their testimony. Given the totality of the circumstances, the court gives deference to the testimony given by Ms. Medina Massonet and concludes that Mr. Montes Alvarez received the revocation letter dated December 10, 2015, and was aware of the thirty (30) day time frame to refute Treasury's revocation of JEM Restaurant Corporation's liquor license. That thirty (30) day time frame expired on January 9, 2016 without any action being initiated by JEM Restaurant Corporation. By the filing date of the voluntary petition, Treasury's revocation of the liquor license was final, thereby validating Treasury's act of revocation. For the foregoing reasons, it is determined that the liquor license is not property of the estate.

Therefore JEM has failed to meet the first of the four-prong injunction standard that " there be a likelihood of success on the merits of the  claim," we need go no further, JEM's request for an injunction is denied.

SO ORDERED

San Juan, Puerto Rico, this 10th day of June, 2016.

Brian K. Tester
U.S. Bankruptcy Judge

9